Good morning, Your Honors, and may it please the Court, Michael Weinstein from the Federal Public Defender appearing for the Petitioner Appellant Philip Wright. Your Honors, the State has made a number of key concessions that have significantly narrowed the scope of issues in this appeal. Because the State has acknowledged that the prosecutor repeatedly committed egregious misconduct at a rights sanity trial, this Court only needs to assess the prejudicial impact of that misconduct. And in doing so, this Court normally looks at three factors, two of which the State has already conceded weighs in Wright's favor. But before I talk about why the third factor also weighs in his favor, I want to make sure that we don't lose sight of the force. Because typically in a habeas case, this Court, when it's assessing prejudice, applies breadth. And it asks, did an error substantially influence the jury's verdict? But the verdict here arises from a unique context, a unique context from a sanity trial, where the burden of proof was on the defendant, but the standard of proof was just a preponderance of the evidence. And so I think that properly conceptualized, what this Court is trying to ascertain under breadth is this. What impact did the prosecutorial misconduct have on Wright's ability to prove his defense by a mere preponderance of the evidence? And that impact had to be huge, Your Honors. Wright's Miranda invocations were a central part of the sanity trial because of the prosecutorial misconduct. During his opening statement, the prosecutor encouraged the jury to draw an inference of some Wright's Miranda invocations. And then the prosecutor featured these invocations throughout the case in chief, throughout his examination of all three sanity phase witnesses. And then to top it all off, in his closing argument, the prosecutor stressed to the jury that the Miranda invocations in and of themselves were a sufficient basis for finding Wright sane. I'm not sure it matters, but there was no objection, was there, to any of this? That does not matter to the merits analysis of this claim. It does matter to whether this claim is procedurally defaulted, which is a different issue. Which the district court didn't reach. The district court did not reach that. So as I was saying, almost 10 different times during this two-day sanity trial, the prosecutor endowed the Miranda invocations with great significance. I think it's difficult to fathom how this misconduct could not have substantially influenced the jury's verdict. Now going to that third factor that I mentioned in my opening remarks, that factor asks, was there overwhelming evidence of sanity? And there was not, Your Honors. As one of the prosecutor's own trial experts testified, he said that when you are trying to evaluate a person's sanity, you are, quote, looking for the mental state of the person in as close proximity to the time as the incident occurred as possible, end quote. And so let's go there. We're at a state mental health hospital in a unit where defendants are sent after they've been deemed incompetent to stay in trial. And Philip Wright starts acting very agitated. And the staff reported that he started pacing back and forth erratically. And then they started witnessing some of the telltale signs of manic behavior that they had seen in him before. His eyes got really big. He started gesticulating really wildly. And then he was nonresponsive to verbal cues meant to reorient and redirect himself when in the past, he had responded to those very same cues. And then on top of this, the staff reported that he was displaying disorganized thinking and delusional thought processes. These are all the hallmark signs of someone whose mental state is rapidly deteriorating. And then he hits a staff member and is immediately thrown up against a wall and then put in five-point bed restraints. And staff reported that at that moment, he was still very delusional. Those are the facts that matter, Your Honor. Counsel, I'd like to hear your argument on why the California Court of Appeal decision was unreasonable on the harmlessness. So as this court has done in several different cases, if we can establish that the defendant petitioner suffered actual prejudice under Brecht, it necessarily means that the state court decision was unreasonable. But sometimes this court will actually do a separate 2254-D analysis. And we can offer the court two easy ways of showing that the state court decision was unreasonable. The first is that in his appellate briefs, Wright emphasized to the court that the prosecutor argued in closing, as I mentioned, that the Miranda invocations in and of themselves were sufficient basis for finding him sane. And the state court purported to review the entire record. And the state court said that that did not happen. And to bolster that conclusion, it pointed to a different part of the trial, the prosecutor's opening statement. Your Honor, I've been a habeas lawyer for 10 years. That is as unreasonable a determination of a fact as I've ever seen. Wright said something happened at the trial, and the state court said it did not, when it undeniably did. Now alternatively, if the court is looking for another way of getting around 2254-D, it's this. The state court could not properly assess the prejudicial impact of the prosecutorial misconduct in this case, because it did not understand the gravity and the extent of that misconduct. Well, I mean, but the state court wasn't required to list in its opinion all of the instances of the Doyle error in order for us to conclude that the court understood the gravity of the misconduct, right? I agree with you on that point. But we know that they missed at least two instances of Doyle error. The first is the closing argument, which is possibly one of the most egregious instances of the misconduct, because that's when the prosecutor is really trying to shape the case for the jury for their deliberations. And the very fact that you mentioned before that even the state agrees that it's the conduct at or near the time of the underlying assault that is, and the mental state at that time that is most critical. And so the prosecutor was in effect saying, ladies and gentlemen, regardless of what happened later or before, you know that he was saying because very shortly after the event, he invokes his Miranda rights. So on the prosecution's own theory of what is the critical time, this was the most important evidence. Yes, it was the most salient evidence for the prosecutor, which is why they emphasized it time and time again throughout their case in chief. I don't know if I finished answering your question, Your Honor. I don't remember. Okay. Well, this is what I want to say. So they don't have to identify every single instance of misconduct. I agree with you about that. They should be pointing to, I would think, the most salient examples. They pointed to, with Dr. Fennell's testimony, which is one of the prosecutor's experts, the most benign example of the misconduct. And then additionally, another time that they missed an instance of doyle error is with respect to the defense expert. The prosecutor brought up the Miranda invocations on cross-examination of the defense expert, and the California Court of Appeals said that was proper, and it was not. Doyle and Wainwright say that a prosecutor cannot use Miranda invocations to impeach an offender. Is that the citation to Jones? That is in reference to the citation to Jones, yes. So they were applying a state case that says, which is true, that if you want to rebut a you can do that under Doyle and Wainwright. But that's not what happened here. That is not what happened here. The defense expert and the defense never brought up the Miranda invocations themselves in their case-in-chief. So I think that those are two different ways of showing that the state court decision is unreasonable. Alternatively, if this court looks at all three factors, all three factors under the Heard-Villardi-Gomez test, they weigh in our favor. And so under Brecht, there's actual prejudice here. I see that I'm running out of time, so unless there are any further questions, I'd like to reserve the balance of my time for rebuttal. Okay, very good. Let's hear from the state. Good morning. May it please the Court. Kenneth Byrne on behalf of Respondent Napoli. With respect to counsel's observation about the California Court of Appeal making a mistake about the in-and-of-itself comment and saying that it didn't happen, it took me a while to figure this out. But directing the Court's attention to excerpts of Record 349, which is the opening brief that was filed in the California Court of Appeal, appellants cited that language and cited the wrong page. They cite 12RT3375, and the quote, the language is not there. It's actually on the page before 3375. So what? We have the transcript. I read it. I know. And clearly, the Court got it wrong. So why? Well, I think the Court got it wrong. Why? Hold on a second. Hold on a second. Just why, if the Court, in doing its harmless error analysis, did not have in mind the proper construction of the record below, why in the world would we give any deference to its harmlessness determination? Because it relied on appellant's briefing. Wait a minute. First of all, it was off by one page? Yes. You think the courts of California are incapable of turning the page? Well, in fact, Your Honor, they tried to do their best, and they turned the page to a citation that they thought was what appellant was in fact citing. No, but my point is, it seems unlikely that they could not have, you know, when so much was being made of the summation, that they wouldn't read the entirety of the summation. Your Honor, they certainly could have. They obviously didn't. And even assuming that they made the mistake they did because the appellant had a typographical error, they nevertheless made the mistake. So what does it matter? Well, I just think that it doesn't really mean that the Court of Appeals' prejudice analysis suddenly becomes unreasonable because they relied on a citation that appellant provided. They should have read the whole argument and found that cite. Counsel, here's where my biggest problem is with the State's case. I find the prosecutor's actual argument as a fact matter compelling, that the invocation of the Miranda rights in and of itself demonstrates that he wasn't insane. The problem is, of course, that that compelling argument is forbidden by the Constitution. But if the prosecutor thought that the silence was important enough to tell the jury that this one fact means that the defendant is not insane, how can we view that as harmless? I mean, again, this strikes me as a compelling factual argument, but for the fact that it's forbidden by the Constitution. What I would respectfully submit, Your Honor, is that when you view this issue through the eyes of the HEDPA, I think that you have to look primarily at the witnesses who testified. That comment is a bad comment, it shouldn't have been made, don't deny it. Can't justify it, shouldn't have been made, the in and of itself comment. But when you look at the experts, the opening brief says that the Miranda invocation was the main or primary reason that supported the prosecution's psychiatric experts, and it wasn't. When you look at Dr. Banalas, the prosecution called two psychiatrists to testify at trial. The defendant, who had the burden of proof, called one psychologist, Dr. Selby. The two psychiatrists who testified, first it was Dr. Banalas, and he testified for a number of pages regarding his opinion about why the defendant knew the difference between right and wrong. And he went into a whole bunch of different things. He talked about the activities that the defendant did that day, how the crime was committed and so on. And at the very end, the prosecutor said, what about the fact he invoked his Miranda rights? Again, that shouldn't have happened. And the witness said, sure, you know, that's a good point. Does that mean that Dr. Banalas hinged his opinion on a factor that he didn't even bring up and had to be reminded of by the prosecutor? I don't think so. I don't think that's a fair reading of the record. Now when you look at Dr. Fennell's testimony, and Dr. Fennell, I think, was the kind of more impressive- It's in the question, though, not what was in the doctor's mind, but whether the jury would have been materially impacted in a prejudicial way by the repeated references to this throughout the record. There's something like 10 different times it comes up in the course of the trial. It's featured in opening statement. It's featured very firmly in summation. So the jury is being told, and the prosecution's doctors agree, it's a big thing. So the fact that it wasn't the only thing on which he hinged his opinion doesn't seem to me to be the legal issue. Well, Your Honor, I would respectfully disagree. I think that given that the California Court of Appeal analyzed this issue and applied the Brecht standard, the Chapman standard, the question is, and with all due respect to the court, the question isn't whether this court agrees with that analysis, it's whether it's unreasonable. No, that's right. And the Court of Appeal went over all the different factors, all the different things the defendant did that day, the fact he played ping pong, he did legal research, he filled out a patient grievance. So, Counsel, one thing that I'm having trouble understanding is at the bottom of page 6 to the top of page 7 of the Court of Appeal opinion, this discussion of Jones, I don't understand it. I mean, it seems to me that they're saying that the Miranda invocation by the prosecution was used for something that it wasn't used for. I mean, why else are they citing Jones and why else are they having this extensive quote from Jones about being used to rebut recent fabrication? I mean, what does this mean here in the government's view? I don't know. That's a fair answer. The district court said, you know, the district court acknowledged that language and said, look, you know, the ultimate issue that the Court of Appeal analyzed was one of prejudice. So it's not like the Court of Appeal thought, A, there was no Doyle there, but B, even if there was, it was harmless. That's not what the Court of Appeal did. But this just seems to me to be a very strange reference. I don't disagree with that. I wish I could come up with an explanation, but I can't. No, I appreciate your candor. Let me ask you again, because you framed your argument as though you're entitled to an I guess I'm sort of not with you on that, and I'd like to give you another chance to persuade me otherwise. The way I view this is that both because of the error that Judge Bennett just referenced and because of the error with respect to the closing argument, the Court of Appeal did not have in mind the full record, you know, by which to engage in the harmless error analysis. And so if that's true, it seems to me epidephrines goes out the window and we are just left to do this de novo using our own circuit precedent, which I think is quite unfavorable actually to the state. We might not be able to rely upon that if epidephrines did apply, but if epidephrines is out the window, it seems to me you have a very tough time sustaining this. So it seems to me, at least where I'm at, if you're entitled to epidephrines, perhaps you win. If you're not, though, I think you lose. So why do you think that epidephrines still applies here? Well, Your Honor, I think that, you know, the in and of itself comment that the Court of Appeal, I mean, I don't have any response to that other than what I said before, which was the Court of Appeal relied on the briefing provided by appellant. And they probably should have read, you know, I'm sure they read the whole argument. They obviously missed that in and of itself language. I don't think, and so that, let's say that that was wrong. Let's say that that was a mistake. And let's say you have this kind of, you know, Jones citation that appears to be there for no apparent reason, but I don't think that really affects the overall integrity of the opinion. The issue that the court analyzed was, based on the record as a whole, was the error prejudicial? And I don't think that just because there's one or two mistakes that therefore that means, oh, we can't rely on this. But if the court, though, I mean, again, I agree with you that the court doesn't have to refer to, you know, every, or I agree with your position, the court doesn't have to refer to every single instance of doyle error. But let's say that we knew it had considered only half of them and had ignored the most critical portion of the record that favored the petitioner, right, and it engaged in its harmless error analysis and came out with the result it did, I guess I just, why would we defer to that, right? I mean, I'm more than willing to give the state the benefit of the doubt, the state court the benefit of the doubt, but only if it's, in fact, looked at the entire record. If it's excluded critical pieces of that record, I don't see why I would be compelled to defer to what it did. Well, I respectfully disagree with the premise of the question. I don't think it's fair to say that the court of appeal ignored huge chunks of the record. They relied on the citation about the in and of itself comment, the citation was erroneous. They should have seen it. But I think, if I could just go back to the doctor's testimony, because I think that's really the crux of this issue, the defendant had the burden of proof of showing insanity. All he brought to the table was Dr. Selby, a psychologist. The prosecution had two psychiatrists, and with all due respect to both the counsel and to the court, I don't think that the Morand Invocation, although it was mentioned and relied upon by both Dr. Banalas and Dr. Fennell, I don't think it's fair to say that it was the main thing that they relied on or the primary thing that they relied on. Dr. Banalas mentioned it once on direct after the prosecutor asked him. When you turn to Dr. Fennell, Dr. Fennell explained his opinion, and it appears in the record at 197 through 199. And so Dr. Fennell talked about things that were recorded. He leaned heavily on things that were recorded in the police reports, because they showed what happened closest to time to the incident. And when you read Dr. Fennell's testimony, he talked about a whole bunch of stuff before he got to the Morand Invocation. He talked about the threats that the defendant made. I'm going to punch you. I'm going to kill you. If you give me another PRN. Do you want some of this? He talked about the conflict. Let me, let me, I get your point, the, hypothetically, let's take a case different from this. So the trial proceeds perfectly fine. There's no improper evidence introduced in my hypothetical case. On rebuttal summation, the government says to the jury, the, you notice that the defendant did not take the stand. That in itself, in and of itself, is enough to show his consciousness of guilt. He has remained silent because he knows he's guilty of sin. And for some reason, in my hypothetical, maybe the defense counsel is distracted or whatever. It doesn't object. But nothing else has occurred during the course of the trial, except that in and of itself statement about a constitutional right. Are you saying that it would be reasonable for a California court to, appellate court to say, well, it was just a, you know, one little bad comment. And there was nothing, the trial was otherwise perfect. The jury probably disregarded it. Or wouldn't that be a blatant case of where it would be unreasonable for the court to say anything like that? Your Honor, it's been a long time since I briefed the issue of Griffin error. It would be a blatant Griffin error. I don't remember if Griffin error, frankly, is structural or not. If Griffin error is not structural error, if it's amenable to harmless error analysis, then I think the answer to the court's question is, it would be reasonable if the evidence was strong enough. Otherwise, it would be deemed to be structural error. And it may be for all, it's literally been probably 10 years since I've had to brief Griffin because it doesn't come up that often with all candor. But my only point is, you can have- I can't understand why you haven't researched the hypothetical I just dreamed up two minutes ago. Hard enough to get a handle on this right now. But the point is, is that the Supreme Court is adept at saying certain things are structural error. For example, the denial, the erroneous denial of a timely FRETA motion. Can't assess prejudice, structural error. We wouldn't write a brief that argued harmless error in that context because it's structural error. But if the Supreme Court says, look, the Constitution gives criminal defendants this right, okay, but if that right is violated, then you apply Chapman or you apply Brecht in the habeas context, that allows for the possibility that depending on a particular record, the error may or may not be harmless. In this case, the California Court of Appeal found the error harmless, as did both the magistrate judge and the district court judge. And since I'm putting all my cards on my table, respect to Judge Bennett's question, this is kind of a close case. The magistrate judge said, I do not reach this decision easily. The Article 3 judge, Judge Gee, when she adopted the report and recommendation said, constrained by the AEDPA standard, I deny relief. So this is a close case. The Court of Appeal probably could have decided the case differently, but it didn't. And I think the reason why is when you look at the doctor's testimony, you know, and by the way, you know, it wasn't only the prosecutor that talked about the randomification. Some of the references were made by defense counsel. That's something that I think is kind of glossed over a little bit in the briefing. And that's why, for example, this charge that, you know, the Court of Appeal minimized the number of references. Well, the California Court of Appeal responded to most of the instances that they erased. For the first time in federal court, all of a sudden, it's these additional times that defense counsel asked the witnesses about the randomification. And I think what happened in all candor here is I think the lawyers, both the prosecutor and the defense counsel, they knew about Doyle. There was no Doyle error at the guilt phase of this trial. They didn't know about Wainwright? They didn't know about Wainwright. I mean, I think it's obvious, you know, when you read the... And in all candor, I've been practicing criminal law in California for 29 years. I had never had to brief the Wainwright issue because I don't think it comes up that often. There's not that many NGI trials in California. And I don't think there's... There's never been a case I've worked on where there was an NGI trial and the defendant had invoked his Miranda rights and the lawyers commented on it. Either the defendant waived his rights or the lawyers respected it. I don't know. Counsel, you're well over your time. Do you have a concluding thought you want to end on? I guess what this case comes down to, in my opinion, is that Dr. Selby's opinion, the defense expert, his opinion just didn't do the job. And I think that's what the district court found. His conclusions about sanity were just conclusory and vague and they were contradicted. He was broken down on cross-examination. First, he said that the defendant was insane and, you know, he was mentally ill, for sure. He had delusions, he was schizophrenic, but he knew the difference between right and wrong. As he admitted to Dr. Selby 28 days after the crime, of course, Dr. Selby said, well, that doesn't count. But the defendant later, he apologized. One comment we haven't made is that he apologized to staff after this happened. Not clear when, if it was that day or... But Dr. Selby talked about it, so it was at least 28 days after. So the defendant tells Dr. Selby, I know it's wrong to hit people, I apologize to staff for what I did, you know, and why was it that he was insane at the time that he attacked Sandra Keller, whereas before he'd been doing legal research and playing ping pong and doing all this other stuff. And later on, when Dr. Fennell and Dr. Banalas interviewed him, he was cooperative, he was able to discuss the crime clearly. You know, I guess this insanity kind of came and went, but Dr. Selby just couldn't explain adequately. Thank you, counsel. Thank you. You have some time for rebuttal? Thank you, Your Honors. Just one point. Even though the Miranda invocations may not have been the primary or the main piece of evidence in the prosecution's case in chief, it was definitely a significant and central part and the Miranda invocation was the only fact that the prosecutor singled out in his closing argument as a fact that was sufficient in and of itself to reject the defendant's defense. So, unless the court has any other questions, we would ask that the court reverse the district court's judgment and grant habeas relief in this case. Okay. I do have one question. I mean, wouldn't we, even if we agreed with you on the Doyle error, wouldn't we have to send it back for a determination of the procedural bar issue? Oh, I think on this record, this court can reach the procedural default issue and rule in our favor. We've explained in our reply brief that there's cause and prejudice to overcome this. By finding that there was, in fact, prejudicial Doyle error, that necessarily is wrapped up in the prejudice analysis of the cause and prejudice framework and as far as cause, we've established that trial counsel was ineffective because this was not an instance where trial counsel did not want to make an issue out of prosecutorial misconduct and highlight it for the jury. This is an instance where the misconduct occurred time and time again, ten different times it occurred. And as the state acknowledged, it probably occurred because the defense attorney did not realize that this was the law. And as the Supreme Court said in Hinton v. Alabama, when you are unreasonably unaware of the governing law, that in and of itself is ineffective assistance of counsel. So on this record, we think that this court could rule in our favor on cause and prejudice. Okay. All right. Thank you very much. The case just argued is submitted.
judges: Watford, Rakoff, Bennett